PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-3559

_____

D.C. Docket No. 98-CR-48/RV

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/12/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACK ACHESON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 12, 1999)**

Before TJOFLAT and DUBINA, Circuit Judges, and STORY*, District Judge.

_____
*Honorable Richard W. Story, U.S. District Judge for the Northern District of
Georgia, sitting by designation.

STORY, District Judge:

In this case we consider the constitutionality of the Child Pornography Prevention Act of 1996 (CPPA). Defendant Acheson pled guilty to violating the Act; now he challenges his conviction asserting the CPPA is unconstitutionally vague, overbroad, and generally violates the First Amendment. The district court concluded the CPPA is constitutional. We agree and affirm Defendant's conviction as we hold the CPPA puts a reasonable person on notice of what conduct it prohibits, is not substantially overbroad, and does not run afoul of the First Amendment.

I. Background

After his arrest for violating the CPPA, Defendant Acheson pled guilty to (1) knowingly receiving visual depictions of minors engaged in sexually explicit conduct transported in interstate commerce by means of the computer, and (2) knowingly possessing material containing three or more images of child pornography. As he entered his guilty plea, Acheson reserved the right to appeal the constitutionality of the Act. This appeal of the denial of Defendant's Motion to Dismiss the superseding indictment followed.

In pleading guilty to the offenses, Acheson admitted the truthfulness of the government's proffer in which the Assistant United States Attorney told the story leading up to Defendant's arrest. These admissions form the factual basis

of this case. In September 1996 the United States Customs Department, acting on a tip from German authorities, discovered that a person using the screen name Firehawk96 had downloaded computer graphic files containing child pornography. In August 1997 FBI agents received additional information that Firehawk96 had obtained more sexually explicit images of children over America On Line. After learning Firehawk96 was Acheson's screen name, officers searched his home and seized his computer. On his computer, officials found over 500 computer images of child pornography[1] which Firehawk96 received between January 1996 and November 1997.

## II. The CPPA

Child pornography is no new problem; its presence in cyberspace is. See United States v. Hilton, 167 F.3d 61, 65 & n.1 (1st Cir. 1999) (documenting international response to effects of technological advances on child pornography trade). Congress's first comprehensive child pornography legislation came in 1977 when it enacted the Sexual Exploitation of Children Act. Pub. L. No. 95-222, 92 Stat. 7 (1977) (codified as amended at 18 U.S.C.A. §§ 2251-2253 (West 1984 & Supp. 1999)). Later amendments

---

[1] Acheson makes no attempt to assert any of these images are not real children engaged in sexually explicit situations.

3

extended the statutes' scope to include the use of computers to transport, distribute, or receive child pornography. Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100-690, 102 Stat. 4486 (1988) (codified as amended at 18 U.S.C.A. § 2252 (West 1984 & Supp. 1999)).

In further response to changing technological conditions, Congress enacted the CPPA which prohibits "virtual" child pornography–computer-altered images that are practically indistinguishable from actual photographs of minors in sexually explicit situations. In order to criminalize the possession of these images, Congress defined "child pornography" as follows:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where–
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> (B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or
> (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct. . . .

18 U.S.C.A. § 2256(8) (West Supp.1999).

In this case, Defendant contends the "appears to be" language renders the statute impermissibly vague, overbroad, and generally violative of the First

Amendment. A brief review of the purposes behind the enactment of the CPPA helps frame our inquiry into the constitutionality of the CPPA.

In expanding the reach of federal child pornography statutes, Congress addressed several closely related concerns. Congress recognized that new "technologies make it possible to produce . . . visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct." CPPA, Pub. L. No. 104-208, § 1(1), 110 Stat. 3009-26 (1996). Pedophiles often rely on child pornography to win over their victims. Virtual pornography is a powerful tool in pedophiles' arsenals as "a child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity." CPPA, Pub. L. No 104-208, § 1(3), 110 Stat. 3009-26 (1996).

Not only does virtual pornography serve this end as effectively as the real thing, it also whets the appetite of child molesters just as much as child pornography created through the use of real children. CPPA, Pub. L. No. 104-208, § 1(8), 110 Stat. 3009-26 to 3009-27 (1996). Thus, defining child

5

pornography in a manner which captures images that "appear to be" minors engaged in sexually explicit activity serves the two goals of the Act which are "the elimination of child pornography and the protection of children from sexual exploitation."  CPPA, Pub. L. No. 104-208, § 1(13), 110 Stat. at 3009-27 (1996).

III.  Discussion

From the First Amendment's proclamation "Congress shall make no law . . . abridging freedom of speech" springs a vast body of law.  U.S. Const. amend. I.  One part of that law holds some types of speech make up "no essential part of any exposition of ideas," and thus may be freely regulated "because of their constitutionally proscribable content."  See R.A.V. v. City of St. Paul, 505 U.S. 377, 383-85, 112 S.Ct. 2538, 2543-44, 120 L.Ed.2d 305 (1992) (discussing "unprotected" status of fighting words, obscenity, and libel).  Child pornography is one type of unprotected speech.  New York v. Ferber, 458 U.S. 747, 763, 102 S.Ct. 3348, 3357, 77 L.Ed. 1113 (1982).

A.  Challenge Under General First Amendment Principles

Acheson contends the CPPA generally violates the First Amendment because it bans protected speech, but he makes no attempt to show any of the 500 or so images of children in sexually explicit situations recovered from his

6

computer are protected speech. Accordingly, we construe his general First Amendment challenge as a facial challenge to the validity of the CPPA. In making a facial challenge to the validity of the CPPA, he "bears the burden of proving the law could never be constitutionally applied." Jacobs v. The Florida Bar, 50 F.3d 901, 906 n.20 (11th Cir. 1995).

The constitutionality of the CPPA is to be examined in the context of Congress's power to regulate child pornography. The CPPA is a content-based restriction on speech, as it is the content of an image of a minor or cyber-minor engaged in sexually explicit conduct that defines its unlawful character. See United States v. Hilton, 167 F.3d 61, 68 (1999) ("Blanket suppression of an entire type of speech is by its very nature a content-discriminating act.").

Content-based restrictions must be narrowly drawn to serve a compelling governmental interest. Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988). Notwithstanding the "risk of suppressing protected expression," Congress and the states are "entitled to greater leeway in the regulation of pornographic depictions of children." Ferber, 458 U.S. at 756, 102 S.Ct. at 3354. It is beyond question that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." Id. at 757, 102 S.Ct. at 3355. Criminalizing the

7

possession of child pornography is justified in light of these concerns.  Osborne

v. Ohio, 495 U.S. 103, 111, 110 S.Ct. 1691, 1697, 109 L.Ed. 2d. 98 (1990).

As "it is well-settled that child pornography, an unprotected category of

expression identified by its content, may be freely regulated," Hilton, 167 F.3d

at 69, Appellant's facial challenge fails.  His arguments regarding the scope

and content of the statute are best analyzed under the overbreadth and

vagueness doctrines.

B.  Overbreadth

The overbreadth doctrine allows a litigant who would not ordinarily

have standing to attack a statute's validity to raise a constitutional challenge.

An overbreadth challenge is based on the statute's "possible direct and indirect

burdens on speech."  American Booksellers v. Webb, 919 F.2d 1493, 1499-500

(11th. Cir. 1990).  The overbreadth doctrine "protects the public from the

chilling effect such a statue has on protected speech; the court will strike down

the statute even though in the case before the court the governmental entity

enforced the statute against those engaged in unprotected activities."

Nationalist Movement v. City of Cumming, 934 F.2d 1482, 1485 (11th Cir.

1991) (Tjoflat, J., dissenting).

In considering the overbreadth doctrine, we remain mindful its application is "strong medicine," and "has been employed by the Court sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A statute's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615, 93 S.Ct. at 2918. When facing an overbreadth challenge, a court should first attempt to construe the statute in a manner which avoids constitutional problems. Ferber, 458 U.S. at 769 n.24, 102 S.Ct at 3361 n.24.

Here, the crux of Acheson's overbreadth argument is that the "appears to be" language impermissibly expands the scope of the CPPA to the point where it captures so much constitutionally protected conduct as to render the statue invalid. We disagree. The CPPA's overbreadth is minimal when viewed in light of its plainly legitimate sweep.

To the extent it defines "child pornography" as images of actual minors, the CPPA passes constitutional muster with room to spare. Only where the definitional language refers to images that "appear to be" minors do potential constitutional problems arise. It is the application of the statute to images of youthful-looking adult models on which Acheson's argument rests. To deal

with this argument, we turn to the legislative record and to other provisions of the Act and discover the problem is more illusory than real.

In crafting the definitional language at issue in this case, Congress took careful aim at a narrow range of images that otherwise evaded the law's reach. The "appears to be" language targets images "which are virtually indistinguishable to unsuspecting viewers from unretouched photographs of actual children engaging in identical sexual conduct." S. Rep. No. 104-358, at pt. I, IV(B). Left unregulated, computer-created images present the potential for tremendous expansion of child pornography. Criminalizing the possession of these materials is consistent with a scheme that counts as its ultimate goal the destruction of this type of material. Osborne, 495 U.S. at 111, 110 S.Ct. at 1697.

Such a goal is plainly permissible, as the justifications for a total ban on child pornography extend beyond the harm to children used in its production to those injured when the images are used as a tool of seduction. Id. As the rationale for enacting the CPPA rests on solid footing even where no minor is harmed in the production of the child pornography, the CPPA legitimately captures a large amount of constitutionally proscribable conduct. It is against this backdrop we assess any potential overbreadth.

Appellant contends the statute captures a substantial amount of adult-oriented material, relying on language in Ferber suggesting "a person over the statutory age who perhaps looked younger" could be used to make an otherwise illegal performance fall outside the reach of the statute in that case. Ferber, 458 U.S. at 763, 102 S.Ct. at 3357. We must look closely at the context of this pronouncement before giving it too much weight. See id. at 774, 102 S.Ct. at 3364 (O'Connor, J., concurring) ("The compelling interests identified in today's opinion suggest that the Constitution might in fact permit New York to ban knowing distribution of works depicting minors engaged in explicit sexual conduct, regardless of the social value of the depictions.").

First, it comes in a section of the opinion recognizing the "exceedingly modest, if not de minimis" value of permitting photographic reproductions of images of children engaged in sexual conduct. Id. Second, the Court found it "unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work." Id. at 763-64, 102 S.Ct. at 3357.

Reading the definitional language along with the statute's other provisions further lessens our concerns about possible overbreadth. First, the

11

CPPA offers an affirmative defense to its provisions dealing with the production of explicit material made with persons of suitable age. 18 U.S.C. § 2252A(c). This provision works in conjunction with the record keeping requirements of 18 U.S.C. § 2257 to encourage producers of sexually explicit adult material to promote their materials as legal, thereby minimizing the risk of prosecution of a person for possessing protected material.

Second, the government must prove the defendant knowingly possessed child pornography. The scienter requirement limits the scope of the application of the Act because the desire for prosecutorial efficiency dictates the "vast majority of prosecutions under the 'appears to be a minor' provision would involve images of pre-pubescent children or persons who otherwise clearly appear to be under the age of 18." Hilton, 167 F.3d at 73.

Finally, Congress's conclusion that "purveyors of child pornography usually cater to pedophiles, who by definition have a predilection for pre-pubertal children" further suggests the legitimate sweep of the CPPA far exceeds the threat of improper applications. Id. "Even where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . ." Obsorne, 495 U.S. at 112, 110

S.Ct. at 1697 (internal quotation marks and citation omitted). The CPPA undoubtedly captures a broad range of images falling squarely within the well-established parameters of constitutionally proscribable child pornography. Since the demand driving the child pornography market is primarily for images falling far from any constitutional protection, we conclude the legitimate scope of the statute dwarfs the risk of impermissible applications.

Given the lack of any substantial overbreadth in light of the statute's legitimate sweep, the CPPA withstands this constitutional challenge. Any potential overbreadth that may remain in light of the factors discussed above should be "cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." Broadrick, 413 U.S. at 615-16, 93 S.Ct. 2918.

C. Vagueness

Having determined the CPPA is not substantially overbroad, we now are asked to determine if it is impermissibly vague. The void for vagueness and overbreadth doctrines are closely related as a less precise law may necessarily capture more protected conduct at its edges. See Villiage of Hoffman Est. v. Flipside, 455 U.S. 491, 495 n.6, 102 S.Ct. 1186, 1191 n.6, 71 L.Ed.2d 362 (1982).

13

Because we so highly value liberty, restrictions on our liberty must be spelled out with sufficient clarity to put citizens on notice of what conduct is prohibited and with enough definiteness to limit arbitrary law enforcement. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d. 903 (1983). A statute will be held void for vagueness if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." Id. Where the challenged provision "abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms" and understandably generates cause for concern. Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1982). Yet some areas are more sensitive than others. See R.A.V., 505 U.S. at 383, 112 S.Ct. at 2543 ("a limited categorical approach has remained an important part of our First Amendment jurisprudence"). Sexually explicit images falling close to the line separating adult pornography and unprotected child pornography are outside the most sensitive areas of speech vital to the free exposition of ideas.

Keeping these principles in mind, we conclude the CPPA defines the criminal offense with enough certainty to put an ordinary person on notice of

14

what conduct is prohibited. A reasonable person is on notice that possessing images appearing to be children engaged in sexually explicit conduct is illegal. The heart of Acheson's vagueness argument is that it is impossible to tell whether an image "appears to be" a minor. We disagree.

Under the CPPA, a jury must decide "whether a reasonable unsuspecting viewer would consider the depiction to be of an actual individual under the age of 18 engaged in sexual activity." Hilton, 167 F.3d at 61. The physical characteristics of the person depicted in the image go a long way towards determining whether the person appears to be a minor. The materials may even give some indication of the actual ages of the participants.[2]

Moreover, the challenged provisions do not encourage arbitrary and discriminatory enforcement. Acheson pled guilty to violating § 2252A, for which an affirmative defense is available.[3] However, the most crucial protection against unscrupulous enforcement springs from the scienter requirement. The statute applies only to a person who "knowingly receives or

---

[2] In this case, for example, some of the images carried file names suggesting the ages of the participants. The file names included the following: "KIDS~1.JPG", "!!!6SUK.JPG", "SEXKD001.JPG", "9YRTINA.JPG", "7Fkdad.jpg", "08with15.jpg", "11rape.jpg", and "Rina& Dad.jpg."

[3] The affirmative defense which applies to those possessing child pornography is only available if the defendant possessed less than three images and promptly destroyed or reported those images once he discovered their contents. § 2252A(d).

15

distributes" or "knowingly possesses" child pornography. 18 U.S.C. § 2252A(a)(2); 18 U.S.C. § 2252A(a)(5)(B).

The scienter requirement means "the government must show not only that the individual purposely acquired or distributed the material, but that he did so believing that the material was sexually explicit in nature and that it depicted a person who appeared to him to be (or that he anticipated would be) under 18 years of age." Hilton, 167 F.3d at 75. "Thus, a defendant who honestly believes that the individual depicted in the image appears to be 18 years old or older (and is believed by a jury), or who can show that he knew the image was created by having a youthful-looking adult pose for it, must be acquitted, so long as the image was not presented or marketed as if it contained a real minor." Id.

These safeguards against improper enforcement create an incentive for focusing prosecutorial energy on the heart of the child pornography problem–the pre-pubescent child pornography market. Because the statute puts a reasonable person on notice as to what conduct is prohibited and provides

adequate protection against arbitrary enforcement, Acheson's vagueness challenge fails.[4]

## IV. Conclusion

For these reasons, we conclude the district court did not err in denying Acheson's Motion to Dismiss the superseding indictment. The district court's judgment is therefore affirmed.

AFFIRMED.

---

[4] In addition to his facial challenges, Acheson contends the district court unconstitutionally applied 18 U.S.C. § 2252A(a)(2) by failing to require the government to establish the scienter requirement. We find this argument lacks merit as Acheson admitted knowingly downloading and saving hundreds of images of actual children in sexually explicit situations.