IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-40034

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE ERVIN FOX, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

April 13, 2001

Before WIENER and STEWART, Circuit Judges, and SMITH,[*] District Judge.

WIENER, Circuit Judge:

In this Internet child pornography case, Defendant-Appellant George Ervin Fox, Jr. ("Fox") challenges on several grounds his conviction and sentencing pursuant to 18 U.S.C. § 2252A, which criminalizes the knowing receipt via computer of any visual depiction that is, "appears to be," or "conveys the impression of" a minor engaging in sexually explicit conduct. For the reasons discussed below, we affirm both Fox's conviction and the sentence

_____

[*]District Judge of the Western District of Texas, sitting by designation.

imposed by the district court.

I.
FACTS AND PROCEEDINGS

On the morning of July 11, 1997, Fox, who was employed by a private investigation firm, informed the owner, Keith McGraw, that he (Fox) had been working at the firm's computer ("the computer")[1] when suddenly pornographic images began to appear on the screen. Fox reported that he was instigating an investigation immediately to discover the source of the pornography. McGraw promptly informed the FBI about the incident.

Under questioning by the FBI, Fox admitted that he had received an email the night before he reported the incident to McGraw from someone using the screen name "Opulot" who did not want to receive any more of "this stuff." In that email, Opulot stated that he or she had obtained the addressees' screen names and intended to forward them to the Internet provider, America Online, so that the addressees could be "put in jail."

Almost two years later, in March 1999, Fox gave a statement to another FBI agent that detailed a different account of how the pornography happened to be received on the computer. Although McGraw had been informed by Fox in 1997 that he was only investigating the source of pornography that had appeared

---

[1]Fox used the computer located in McGraw's office for Internet purposes. His own desktop computer at the firm was not connected to the Internet and was used primarily for word processing.

2

mysteriously on the computer's screen, Fox admitted in the March 1999 statement to the FBI that he had "put his name on a list" to receive child pornography and subsequently began to receive and send such material. Fox insisted that he did so only as part of his own "investigation" into Internet child pornography, with the intention of turning over any "evidence" collected to the proper authorities.

Included in Fox's computer files were numerous pornographic images, 17 of which were later entered into evidence at his trial. Just three days before he initially informed McGraw about the appearance of child pornography on the computer, Fox had transmitted two of these images over the Internet, each of which depicts a young girl in a state of undress, one bearing the comment "Here's my 15-year-old-niece, Sky" and the other bearing the comment "Here's another of Poppy."

In May 1999, a grand jury returned an indictment against Fox charging him with one count of knowingly receiving child pornography via computer in violation of 18 U.S.C. § 2252A. This statute subjects to criminal penalties "any person who knowingly receives or distributes any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer[.]" The term "child pornography," in turn, is defined by 18 U.S.C. § 2256(8) as

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture . . . where (A) the production of such visual

3

depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is, <u>or appears to be</u>, of a minor engaging in sexually explicit conduct; (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that <u>conveys the impression</u> that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct[.]

(emphasis added).  Fox's motion to dismiss the indictment on the ground that § 2252A violates the First Amendment was denied by the district court.  He was subsequently tried by a jury, which found him guilty of the charge alleged in the indictment.

In sentencing Fox, the district court determined that his failure to accept responsibility for his conduct, together with the fact that "when [Fox] would send some of the pornographic photographs to others, [he] intentionally portrayed these photographs to be of himself and/or his own children," warranted a sentence at the high end of the Sentencing Guideline range. Accordingly, Fox was sentenced to 46 months of confinement, ordered to pay a $5000 fine and a $100 special assessment, and assessed a term of supervised release of three years.

Fox now appeals to us, objecting to his conviction and sentence on grounds that (1) the statute under which he was convicted, 18 U.S.C. § 2252A, relies on a definition of "child pornography" that is overbroad and vague, in violation of the First Amendment, (2) the evidence is insufficient to sustain his conviction, (3) the district court abused its discretion in

4

admitting into evidence copies of 17 of the images found in his computer files, (4) the district court violated the ex post facto clause by imposing a sentence that exceeds the maximum assessable under the applicable Guideline in force at the time of the offense, (5) the district court erred by increasing his offense level for receiving material involving prepubescent minors without a sufficient evidentiary basis to support such an enhancement, and (6) the district court clearly erred in denying a reduction in his sentence for acceptance of responsibility.

II.
ANALYSIS

A. Standard of Review

We review the constitutionality of a federal statute de novo.[2] In reviewing a claim of insufficient evidence, we must determine whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[3] We review the district court's evidentiary rulings for abuse of discretion.[4] The district court's interpretation of the Sentencing Guidelines is reviewed de novo, but its findings of fact and application of the Guidelines to the specific facts of the case are reviewed for clear

[2]United States v. Jennings, 195 F.3d 795, 800 (5th Cir. 1999).

[3]United States v. Greer, 137 F.3d 247, 249 (5th Cir. 1998).

[4]United States v. Doggett, 230 F.3d 160, 167 (5th Cir. 2000).

5

error.[5]  In addition, we review the district court's determination of acceptance of responsibility under the Guidelines with even more deference,[6] as the district court is in the best position to assess the defendant's acceptance of responsibility and "true remorse."[7]

B.  First Amendment

Fox urges us to reverse his conviction on the ground that the statute under which he was convicted, 18 U.S.C. § 2252A (sometimes the "statute"), is unconstitutional because it prohibits speech protected by the First Amendment.  The government counters that child pornography as defined in § 2256(8) is not constitutionally protected and accordingly may be regulated by the government even to the extent of banning such materials outright.

As an initial matter, Fox's contention that the power to regulate child pornography does not extend to prohibiting the mere possession of such materials was foreclosed by the Supreme Court over ten years ago in Osborne v. Ohio, which held that simply possessing and viewing child pornography can be constitutionally proscribed.[8]  The more difficult question presented by this case is

---

[5]United States v. Lyckman, 235 F.3d 234, 237 (5th Cir. 2000).

[6]United States v. Nguyen, 190 F.3d 656, 659 (5th Cir. 1999).

[7]United States v. Rodriquez, 942 F.2d 899, 902-03 (5th Cir. 1991).

[8]495 U.S. 103, 111 (1990); see also United States v. Hilton, 167 F.3d 61, 63 (1st Cir. 1999)("[I]t is well-settled that child pornography, an unprotected category of expression identified by its content, may be freely regulated.").

6

whether Congress can, without violating the First Amendment, <u>expand</u> the definition of child pornography to include images that only "appear to be" minors engaged in sexually explicit conduct. Although the First, Fourth, and Eleventh Circuits have rejected identical First Amendment challenges to the statute,[9] the Ninth Circuit has invalidated the statute on the ground that by criminalizing visual depictions that only "appear to be" or "convey the impression of" minors engaging in sexual conduct, the statute prohibits a type of expression protected under the Supreme Court's extant First Amendment jurisprudence.[10]

1.  <u>Strict Scrutiny</u>

As a content-based restriction on speech,[11] § 2252A can only

---

[9]<u>See</u> <u>United States v. Hilton</u>, 167 F.3d 61 (1st Cir. 1999); <u>United States v. Mento</u>, 231 F.3d 912 (4th Cir. 2000); <u>United States v. Acheson</u>, 195 F.3d 645 (11th Cir. 1999).

[10]<u>Free Speech Coalition v. Reno</u> 198 F.3d 1083, 1092 (9th Cir. 1999), <u>cert. granted sub nom. Ashcroft v. Free Speech Coalition</u>, No. 00-795, 121 S.Ct. 876, 69 USLW 3382 (U.S. Jan. 22, 2001).  We recognize that this circuit split will most likely be resolved by the Supreme Court when it hears and decides <u>Free Speech Coalition</u>, but as the Supreme Court will not do so until next term, and Fox has not asked us to postpone deciding his case until then, we reach and decide the issue of § 2252A's constitutionality.

[11]In his dissent to <u>Free Speech Coalition</u>, Judge Ferguson objects, <u>inter</u> <u>alia</u>, to analysis of the statute under the strict scrutiny framework, contending that "the Supreme Court's previous child pornography decisions . . . indicate that the proper mode of analysis is to weigh the state's interest in regulating child pornography against the material's limited social value."  <u>See</u> 198 F.3d at 1101 (Ferguson, J., dissenting).  As Fox's challenge to the statute is based on a claim that the very <u>definition</u> of child pornography employed by the statute is unconstitutionally expansive, however, we agree with every circuit that has

7

stand if it survives strict scrutiny, i.e., if the statute has been narrowly tailored to advance a compelling governmental interest.[12] Notwithstanding the general rule that "[c]ontent-based regulations are presumptively invalid"[13] because of the intolerable "risk of suppressing protected expression," the Supreme Court has made clear that in regulating child pornography, Congress is entitled to "greater leeway."[14]

     a.  <u>Compelling Interest</u>

Bearing these principles in mind, we ask first whether the government advances a compelling interest by banning visual depictions that only "appear to be" or "convey the impression of" minors engaging in sexually explicit conduct. We begin with a brief overview of the history of the statutory language at issue in this case. In 1996, responding to the proliferation of computer-generated or "virtual" child pornography[15] and the resulting

---

considered this issue that strict scrutiny is the proper mode of analysis.

    [12]See <u>United States v. Playboy Entertainment Group, Inc.</u>, 529 U.S. 803, 120 S.Ct. 1878, 1886 (2000) (citation omitted).

    [13]See <u>R.A.V. v. St. Paul</u>, 505 U.S. 377, 382 (1992).

    [14]See <u>New York v. Ferber</u>, 458 U.S. 747, 756 (1982).

    [15]For example, Congress found that computers and computer imaging technology can be used to "[1] produce . . . visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct . . . [2] alter sexually explicit photographs, films, and videos in such a way as to make it virtually impossible . . . to determine if the

8

problems in enforcing federal child pornography statutes that required the government to prove that an actual minor had been used in the production of the pornography, Congress enacted the Child Pornography Prevention Act (the "CPPA") to amend 18 U.S.C. § 2251 et seq.  The CPPA expanded the definition of child pornography to include visual depictions that "appear to be" or "convey the impression of" minors engaging in sexually explicit conduct.

In support of the CPPA, Congress offered the following justifications: (1) preventing the use of "virtual" child pornography to seduce children; (2) protecting all children from the harmful effects of child pornography, including the myriad minors not actually depicted or used in its production; (3) eliminating pornographic images that "whet the appetites" of pedophiles to abuse children sexually; (4) destroying the child pornography market, and (5) prosecutorial necessity.[16]  Congress was particularly concerned that "[i]f the government must continue to prove beyond a reasonable doubt that mailed photos, smuggled magazines or videos, traded pictures, and computer images being transmitted on the Internet, are indeed actual depictions of an actual minor engaging [in] the sex portrayed, then there could be a built-in reasonable doubt argument in every child

---

offending material was produced using children . . . [and] [3] alter innocent pictures of children to create visual depictions of those children engaging in sexual conduct[.]"  S. Rep. No. 104-358, at 2 (1996).

[16]See id. at 12-20.

exploitation/pornography prosecution."[17]

In rejecting these justifications for § 2252A's ban on "virtual" child pornography, the Ninth Circuit reasoned that the landmark case of <u>New York v. Ferber</u>, in which the Supreme Court held that child pornography is not entitled to protection under the First Amendment,[18] the Court focused on only "the harm to the children <u>actually used</u> in the production of the materials."[19] Accordingly, the Ninth Circuit concluded that "[n]othing in <u>Ferber</u> can be said to justify the regulation of such materials other than the protection of the actual children used in the production of the materials."[20] The Ninth Circuit ultimately held that the compelling interest articulated by the government —— the "devastating secondary effect that sexually explicit materials involving the images of children have on society, and on the well being of children"[21] —— does not justify criminalizing the possession of such images "when no actual children are involved in the illicit images either by production or depiction."[22]

We respectfully disagree with the Ninth Circuit's

---

[17]<u>See</u> <u>id.</u> at 16 (internal quotation marks omitted).

[18]458 U.S. 747, 764 (1982).

[19]<u>Free Speech Coalition</u>, 198 F.3d at 1092 (emphasis added).

[20]<u>Id.</u>

[21]<u>Id.</u> at 1091.

[22]<u>Id.</u> at 1095.

determination that preventing harm to children actually depicted in pornography is the <u>only</u> legitimate justification for Congress's criminalizing the possession of child pornography. First, in <u>Osborne</u>, the Supreme Court expressly invoked not only the harm caused to minors actually used in the production of pornography but also the danger posed to children when such pornography is used to seduce or coerce them into sexual activity.[23] It makes little difference to the children coerced by such materials, or to the adult who employs them to lure children into sexual activity, whether the subjects depicted are actual children or computer simulations of children. As Congress found, "the danger to actual children who are seduced and molested with the aid of child sex pictures is just as great when the child pornographer or child molester uses [computer simulations] as when the material consists of unretouched images of actual children."[24]

Second, the <u>Ferber</u> Court expressly endorsed the destruction of the entire child pornography market as a justification for banning sexually explicit images of children.[25] Congress has found that, even when children are not exploited in the actual production of

_____

[23]<u>See</u> <u>Osborne</u>, 495 U.S. at 111 ("the evidence suggests that pedophiles use child pornography to seduce other children into sexual activity").

[24]S. Rep. 104-358, at 18.

[25]<u>Ferber</u>, 458 U.S. at 760 (noting with approval that "[t]he most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography]").

11

pornography, the "sexualization of minors creates an unwholesome environment which affects the psychological, mental, and emotional development of children and undermines the efforts of parents and families to encourage the sound mental, moral, and emotional development of children[.]"[26] This finding comports with the Supreme Court's longstanding observation that "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens."[27] As it is beyond question that the government's interest in "'safeguarding the physical and psychological well-being of a minor' is 'compelling,'"[28] we see no reason why such governmental interest in this regard is so attenuated as to limit the extent of its protection only to the youths actually appearing in child pornography.

In sum, we conclude that <u>Ferber</u> and <u>Osborne</u>, decided long before the specter of "virtual" child pornography appeared, in no way limit the government's interests in the area of child pornography to the prevention of only the harm suffered by the actual children who participate in the production of pornography. To the contrary, we agree with the Fourth Circuit that the government has an interest in "shielding <u>all</u> children from sexual

---

[26]S. Rep. 104-358, at 2.

[27]<u>Prince v. Massachusetts</u>, 321 U.S. 158, 168 (1944).

[28]<u>See Ferber</u>, 458 U.S. 756-57 (<u>quoting</u> <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596, 607 (1982)).

12

exploitation resulting from child pornography,"[29] and that the government's interest in this regard is indeed compelling.

   b.  <u>Narrow Tailoring</u>

To satisfy the exacting standards of strict scrutiny, a content-based restriction on speech such as § 2252A must not only advance a compelling governmental interest, but must also be narrowly tailored to attain that end.[30]  We must determine, therefore, whether § 2252A's expansion of the definition of child pornography to include, in addition to sexually explicit images of actual children, images that only "appear to be" minors, is the least restrictive means of furthering the government's interests in combating the harms generated by child pornography.[31]

With respect to the government's interest in eradicating the market for child pornography as a whole, we are satisfied that such efforts "could be effectively frustrated if Congress were prevented from targeting sexually explicit material that 'appears to be' of real children."[32]  Likewise, with respect to the government's interest in preventing the use of pornographic materials to coerce and even blackmail children into performing sexual acts, we have discussed earlier that sexually explicit images that only "appear

---

[29]<u>Mento</u>, 231 F.3d at 920.

[30]<u>See</u> <u>Playboy Entertainment Group</u>, 120 S.Ct. at 1886.

[31]<u>See</u> <u>Sable Communications of Cal., Inc. v. FCC</u>, 492 U.S. 115, 126 (1989).

[32]<u>Hilton</u>, 167 F.3d at 73.

13

to be" minors can, unfortunately, be just as effective in coercing children into sexual activity as images of actual children.

Perhaps most importantly, Congress has advanced a powerful new rationale for the necessity of the "appears to be" language in § 2252A: the need to address the law enforcement problem created by tremendous advances in computer technology since Ferber and Osborne were decided, advances that have greatly exacerbated the already difficult prosecutorial burden of proving that an image is of a real child.[33] Without the "appears to be" language in the statute, "there is frequently a built-in reasonable-doubt argument as to the age of the participant, unless the government can identify the actual child involved."[34] During the trial in the instant case, for example, Special Agent Barkhausen, the government's computer expert, was forced to concede under cross-examination that "there's no way of actually knowing that the individual depicted [in the images] . . . even exists[.]" The "appears to be" language, then, is necessary to confront the enforcement problems that have been increased by these advancements in computer technology.

As further evidence of the statute's narrow tailoring, the government points to the statute's provision that makes an affirmative defense available to those who mail, transport, receive, sell, distribute or reproduce the materials if the person

---

[33]S. Rep. 104-358, at 16-17.

[34]Mento, 231 F.3d at 920.

14

depicted actually was an adult at the time the image was created.[35] Although this defense is not available to those charged with mere possession, the statute does provide a different safe harbor for the individual possessor who can show that he (1) possessed fewer than three such images and (2) promptly and in good faith destroyed or reported the images to law enforcement.[36]

The statute's inclusion of these affirmative defenses, together with the prosecutorial necessity of the "appears to be" language and the nearly identical nature of the harms generated by both "real" and "virtual" child pornography, convince us that "the statutory language . . . cannot be improved upon while still achieving the compelling government purpose of banning child pornography."[37]  Accordingly, we conclude that § 2252A is the least restrictive means of furthering the government's compelling interest in protecting the vulnerable young from the harms generated by child pornography.

We join with the First, Fourth, and Eleventh Circuits, then, in deciding that "it is a logical and permissible extension of the rationales of Ferber and Osborne to allow the regulation of sexual materials that appear to be of children but [do] not, in fact,

---

[35]See 18 U.S.C. § 2252A(c).

[36]See 18 U.S.C. § 2252A(d).

[37]Mento, 231 F.3d at 921.

15

involve the use of live children in their production."[38] As such materials are properly considered "child pornography," they are outside the protection of the First Amendment and may be freely regulated even to the extent of an outright ban. Accordingly, we hold that § 2252A's extension of the prohibition on child pornography to visual depictions that "appear to be" or "convey the impression of" minors engaging in sexually explicit conduct is fully consonant with the First Amendment.

2. Overbreadth

Our conclusion that "virtual" child pornography, like "real" child pornography, is not entitled to First Amendment protection does not end our inquiry into § 2252A's constitutionality. An otherwise constitutional statute may nonetheless violate the First Amendment if it is "overbroad," i.e., if it "criminalizes an intolerable range of constitutionally protected conduct."[39] Even so, we may not invalidate a statute unless its overbreadth is "substantial . . . in relation to the statute's plainly legitimate sweep."[40] We must remain mindful of the Supreme Court's admonition that the overbreadth doctrine is "strong medicine" which should be used "sparingly and only as a last resort."[41]

---

[38] Hilton, 167 F.3d at 73.

[39] See Osborne, 495 U.S. at 112.

[40] Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973) (emphasis added).

[41] Id. at 613.

16

Fox's overbreadth challenge is best understood as a claim that, in addition to capturing unprotected conduct, the "appears to be" net of the statute scoops in a "substantial" by-catch of constitutionally protected conduct as well.  Fox contends, for example, that if the persons depicted are not in fact minors, then the images comprise adult pornography and, as such, are entitled to protection under the First Amendment.  In essence, "[i]t is the application of the statute to images of youthful-looking adult models"[42] that forms the gravamen of Fox's overbreadth challenge.

We have already noted that the statute itself provides an affirmative defense available to those who mail, transport, receive, sell, distribute or reproduce sexually explicit materials if the person depicted actually was an adult at the time the images were created.[43]  In addition, the government must prove in each instance that the defendant <u>knowingly</u> received sexually explicit depictions of minors or those who appear to be minors.  Thus the statute's scienter requirement, which applies to the age of the persons depicted as well as to the nature of the materials, "limits the scope of the [statute] because the desire for prosecutorial efficiency dictates the vast majority of prosecutions . . . would involve images of prepubescent children or persons who otherwise

---

[42]<u>Acheson</u>, 195 F.3d at 651.

[43]<u>See</u> 18 U.S.C. § 2252A(c).

17

clearly appear to be under the age of 18."[44] We also agree with the First Circuit that the danger of persons being convicted under § 2252A of possessing sexually explicit material of adults who look or dress in a youthful manner is "overstated" in light of Congress's determination that purveyors of child pornography "usually cater to pedophiles, who by definition have a predilection for pre-pubertal children."[45]

We acknowledge that the prosecution of individuals on the basis of sexually explicit depictions of youthful-looking adults is theoretically possible; however, the Supreme Court has made clear that "[e]ven where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct."[46] Keeping in mind the Court's caveat that a statute's overbreadth must be "substantial . . . judged in relation to the statute's plainly legitimate sweep[,]"[47] we agree with the First Circuit that "[t]he

---

[44]Acheson, 195 F.3d at 651-52 (internal quotation marks and citation omitted).

[45]Hilton, 167 F.3d at 73-74. In candor we must nevertheless recognize that, as this is an affirmative defense which places the burden of proving the models' majority on defendants who are virtually certain not to be able to track down producers and actors to adduce evidence of age, the defense is likely illusory.

[46]Osborne, 495 U.S. at 112 (internal quotation marks and citation omitted; ellipses in original).

[47]See Broadrick, 413 U.S. at 615.

18

existence of a few possibly impermissible applications of the [statute] does not warrant its condemnation."[48] Instead, whatever overbreadth may exist at the margins of § 2252A with respect to sexually explicit images of youthful-looking adults is "more appropriately cured through a more precise case-by-case evaluation of the facts in a given case."[49]

With respect to the troubling possibility of the statute's application to artistic expression otherwise fully protected under the First Amendment,[50] such as downloaded images of the famed erotic paintings of Balthus[51] or stills from a film version of Nabokov's Lolita, we first recall that we must construe the statute, if at all possible, so as to avoid finding a constitutional violation.[52]

---

[48]Hilton, 167 F.3d at 74.

[49]Id.

[50]Even though Fox does not claim that any of the materials for receipt of which he was convicted constitute such expression, he nevertheless has standing to challenge the statute on this ground as the Supreme Court has "altered its traditional rules of standing to permit — in the First Amendment area — attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." See Broadrick, 413 U.S. at 612 (internal quotation marks and citation omitted).

[51]Balthus, whom Miro called the greatest realist painter of his age, is known, among other things, for his erotically charged paintings of young girls. At his first one-man show in Paris in 1934, Balthus caused a stir with "Guitar Lesson," a painting of an older woman fondling a half-naked young girl, with a discarded guitar lying nearby.

[52]Broadrick, 413 U.S. at 613.

19

Thus, we agree with the First Circuit's reasoning that Congress intended the "appears to be" language of the statute to target only those images that are "'virtually indistinguishable to unsuspecting viewers from unretouched photographs of actual children[,]'"[53] thereby placing "the vast majority of every day artistic expression [such as drawings, cartoons, sculptures, and paintings], even . . . speech involving sexual themes"[54] outside § 2252A's statutory reach.[55]  Any imprecision that may remain at the margins after employing this limiting construction —— say, whether the statute would ban images akin to the work of renowned contemporary artist Chuck Close, whose ultrarealistic paintings can be indistinguishable from close-up photography —— is more appropriately handled not by invalidating the statute but rather by "'case-by-case analysis of the fact situations to which its

---

[53]Hilton, 167 F.3d at 72 (emphasis added) (quoting S. Rep. No. 104-358, at 7).

[54]Hilton, 167 F.3d at 72.

[55]We note that even though the government can only ban adult pornography when, "taken as a whole," the material lacks "serious literary, artistic, political or scientific value," see Miller v. California, 413 U.S. 15, 24 (1973) the Miller standard does not apply to child pornography.  See Ferber, 458 U.S. at 761.  As the Ferber Court explained, "a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography."  See id. at 761.  To the extent that § 2252A might ban "depictions that do not threaten the harms" that Congress has crafted the statute to address, see id. at 775 (O'Connor, J., concurring), we do not believe this potential overbreadth to be sufficiently substantial to warrant invalidating the statute.

20

sanctions, assertedly, may not be applied.'"[56]

In sum, we cannot agree with Fox that § 2252A "criminalizes an intolerable range of constitutionally protected conduct,"[57] particularly when we judge the extent of that overbreadth, as we must, in relation to the statute's "plainly legitimate sweep."[58] We hold that § 2252A is not unconstitutionally overbroad.

### 3. Vagueness

Fox also contends that the statute is void for vagueness. The Supreme Court has held that a statute is unconstitutionally vague if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement."[59] In other words, a statute is void for vagueness if it does not put the average reasonable person on notice of what conduct is prohibited.[60]

Fox nevertheless argues that § 2252A's "appears to be" language is "overly subjective" and thus creates "substantial uncertainty" for viewers because it may be difficult to distinguish between depictions of teenagers from those of young adults with

---

[56]See Broadrick, 413 U.S. at 615-16.

[57]See Osborne, 495 U.S. at 112.

[58]See Broadrick, 413 U.S. at 615.

[59]Kolender v. Lawson, 461 U.S. 352, 357 (1983).

[60]See Acheson, 195 F.3d at 652.

21

even younger appearances.[61]  The Ninth Circuit accepted a similar argument in Free Speech Coalition and held that the "appears to be" and "conveys the impression" language of the statute is unconstitutionally vague because both phrases are "highly subjective."[62]  The Ninth Circuit was concerned that "the vagueness of the statute's key phrases regarding computer images permits enforcement in an arbitrary and discriminatory fashion."[63]

The First, Fourth, and Eleventh Circuits have reached the opposite conclusion.  In Hilton, for example, the First Circuit concluded that the standard for interpreting the key language of the statute is not subjective, but objective: "A jury must decide, based on the totality of the circumstances, whether a reasonable unsuspecting viewer would consider the depiction to be of an actual individual under the age of 18 engaged in sexual activity."[64]  We agree with the First Circuit's reasoning that together the scienter requirement of the statute and the affirmative defense available if the subject of the image was an adult at the time the image was

---

[61]Fox's related contention that the term "lascivious" as used in the statute is similarly "subjective" was foreclosed by the Supreme Court in United States v. X-Citement Video, 513 U.S. 64, 78-79 (1994), which held that use of that term to define the prohibited material is constitutionally permissible.

[62]Free Speech Coalition, 198 F.3d at 1095.

[63]Id.

[64]Hilton, 167 F.3d at 75.

22

produced[65] provide at least a modicum of additional safeguards against improper enforcement.[66]

Likewise, the Eleventh Circuit in Acheson, noting that "[s]exually explicit images falling close to the line separating adult pornography and unprotected child pornography are outside the most sensitive areas of speech vital to the free exposition of ideas,"[67] concluded that a reasonable person is on notice that possessing images appearing to be children engaged in sexually explicit conduct is illegal.[68]  As for the argument that it is "impossible to tell whether an image 'appears to be' a minor," we agree with the Eleventh Circuit that "[t]he physical characteristics of the person depicted . . . go a long way toward determining whether the person appears to be a minor[;]" in addition, computer file names such as "Falcon 10" that, in the custom of the trade, reference the age of those depicted in the images "may even give some indication of the actual ages of the participants."[69]  The Acheson court also noted that the safeguards against improper enforcement provided by the statute, such as its scienter requirement and affirmative defense, "create an incentive

---

[65]See 18 U.S.C. § 2252A(a)(5)(B).

[66]See Hilton, 167 F.3d at 75.

[67]Acheson, 195 F.3d at 652.

[68]Id.

[69]Id. at 652-53.

23

for focusing prosecutorial energy on the heart of the child pornography problem — the pre-pubescent child pornography market."[70]

We are in accord with the line of analysis that emerges from the foregoing reasoning of the First, Fourth, and Eleventh Circuits, and conclude that, taken together, the statute's scienter requirement and affirmative defenses provide sufficient protection against improper prosecution to defeat Fox's vagueness challenge. In this vein, we also agree that the "appears to be" language is not so subjective as to fail to put reasonable persons on notice of what it is that the statute prohibits. Accordingly, we reject Fox's vagueness challenge to the statute.

C. Sufficiency of the Evidence

Having determined that the statute under which Fox was convicted passes constitutional muster, we must next assess his attack on the sufficiency of the evidence adduced by the government to convict him under that statute. Fox contends that the government's evidence is insufficient to (1) negate his "mistake of fact" defense, (2) satisfy the statute's scienter requirement, or (3) establish that the images in question were "lascivious" within the meaning of the statute.

1. Mistake of Fact

Fox argues that he is entitled to a "mistake of fact" defense

---

[70]Id. at 653.

by declaring that he was merely investigating Internet child pornography with a "good motive" —— to "deliver up these defilers of children" to the proper authorities for well-deserved punishment. Recognizing that, standing alone, good motive is no defense,[71] Fox contends that the government has failed to prove beyond a reasonable doubt that he possessed the requisite scienter, which he glosses as "guilty mind." Fox, however, seriously mischaracterizes the statute's scienter element: The government must prove that the defendant <u>knowingly</u>, i.e., voluntarily and intentionally, received child pornography, not that he had some degree of <u>mens rea</u>. Here, Fox himself admitted in his March 1999 statement to the FBI that he had "put his name on a list" to receive child pornography and subsequently began to receive and send child pornography, all quintessential voluntary and intentional acts. As such, Fox's insistence that the government failed to prove that he knowingly received child pornography widely misses the mark.

Furthermore, the government correctly observes that Fox's "mistake of fact" defense is more accurately characterized as a "public authority" defense, which requires a defendant to show that he was engaged by a government official to participate in covert

---

[71]<u>United States v. Chenault</u>, 844 F.2d 1124, 1130 (5th Cir. 1988).

activity.[72]  Fox presented no such evidence to the jury in this case, and so his claim that he is entitled to such a defense must fail.[73]

### 2.  Scienter

Alternatively, Fox argues that even if he is not entitled to a "mistake of fact" or "public authority" defense, the evidence is nevertheless insufficient to prove beyond a reasonable doubt that he knew that the persons depicted in the images were younger than 18.  This contention is baseless.  As we have just noted, the jury heard evidence that Fox himself admitted to an FBI agent to having "put his name on a list" to receive child pornography.  Fox cannot be heard to declare, on one hand, that he was conducting his own "investigation" into Internet child pornography and, on the other hand, that he did not know that the images he received and transmitted were of minors.

### 3. Lasciviousness

Finally, Fox objects that evidence presented to prove the "lasciviousness" of the images is insufficient.  To repeat, Fox was convicted under 18 U.S.C. § 2252A, which subjects to criminal penalties "any person who knowingly receives or distributes any

---

[72]See United States v. Spires, 79 F.3d 464, 466 n.2 (5th Cir. 1996).

[73]Cf. United States v. Mathews, 209 F.3d 338 (4th Cir. 2000) (rejecting award-winning journalist's First-Amendment defense that he traded in child pornography for a "proper purpose," i.e., gathering information for an investigative report).

26

child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer[;]" and the term "child pornography," in turn, is defined as any visual depiction that "is, or appears to be, of a minor engaging in <u>sexually explicit</u> conduct[.]"[74] To carry its burden of proving that the conduct depicted is "sexually explicit," the government may demonstrate, <u>inter alia</u>, that the conduct involves the "<u>lascivious</u> exhibition of the genitals or pubic area of any person."[75]

In this circuit the six-factor test developed in <u>United States v. Dost</u>[76] is employed to determine whether an image is "lascivious."[77] Under <u>Dost</u>, we ask: (1) is the image's focal point the child's genitalia or pubic area, (2) is the setting depicted in the image sexually suggestive, (3) is the child depicted in an age-inappropriate pose or attire, (4) is the child partially clothed or nude, (5) does the image suggest sexual coyness or a willingness to engage in sexual activity, and (6) is the image intended or designed to elicit a sexual response in the viewer. An image need not produce affirmative answers to all of these questions to be

---

[74]<u>See</u> 18 U.S.C. § 2256(8) (emphasis added).

[75]<u>See</u> 18 U.S.C. § 2256(2)(E) (emphasis added).

[76]636 F. Supp. 828, 832 (S.D. Cal. 1986), <u>aff'd</u> 812 F.2d 1239 (9th Cir. 1987).

[77]<u>See</u> <u>United States v. Rubio</u>, 834 F.2d 442, 448 (5th Cir. 1987).

considered "lascivious."[78]  As even Fox concedes that at least seven of the 17 images shown to the jury possess "some" or "most" of the Dost factors, it is enough to say that the jury could easily have found at least one of the images to be "lascivious" within the meaning of the statute; and one is all that is required to support a verdict of guilty.

D.  Admission of the Photographs

Fox proffers two related arguments regarding the admission of the photographic evidence.  First, he advances that the district court abused its discretion in admitting "wholesale" the photographs of 17 of the images taken from his computer files without first requiring the government to make a preliminary showing by expert testimony that each of the photographs it sought to introduce depicts a minor or someone who appears to be a minor. Second, Fox contends that under Rule 403 of the Federal Rules of Evidence, the probative value of the photographs was substantially outweighed by the danger of unfair prejudice, in light of which, argues Fox, the photographs should not have been admitted.

1.  Lack of Expert Testimony

Fox insists that the district court erred by admitting the photographs into evidence without requiring expert testimony as to the age of the persons depicted.  In response, the government reminds us that in United States v. Katz, we held that whether the

---

[78]See Dost, 636 F. Supp. at 832.

28

age of one depicted in child pornography can be determined by a lay jury without the assistance of expert testimony must be determined on a case-by-case basis.[79] Here, in addition to its own examination of the images, the jury was provided with additional evidence in the form of an FBI agent's testimony about the common practice of including indications of the age of the subjects in the file names. In fact, two of the images bear Fox's own words describing the subject as "my 15-year-old niece."

As the government reiterates, the jury did not need to find that all 17 images presented at trial depict subjects under the age of 18; the jurors only needed to conclude that at least one of them, beyond a reasonable doubt, depicted a person who appeared to be less than the age of 18.[80] Inasmuch as even Fox concedes that "[s]ome of the photos appear to be prepubescent children who are . . . obviously less than 18," his challenge to his conviction on this basis fails. The district court did not abuse its discretion in admitting the photographs without expert testimony as to the subjects' ages.

2. Unfair Prejudice

Fox contends in the alternative that even if the photographs

_____

[79]178 F.3d 368, 373 (5th Cir. 1999).

[80]The government also points out that in two of the images, the age of the models is immaterial because the images were "advertised, promoted, presented, described, [and] distributed" as those of minors, and thereby meet the statutory definition of child pornography.  See 18 U.S.C. § 2256(8)(D).

29

are held to be admissible without expert verification of age, their admission unfairly prejudiced him in violation of Federal Rule of Evidence 403.[81]  Fox argues that the effect on the jury of introducing "irrelevant adult pornography" together with "relevant child pornography" was so "inflammatory" that it "painted him as a 'pervert.'"  The government counters that the best evidence of whether the images are, in fact, "child pornography" is the images themselves, and that their admission, although certainly "prejudicial" to the defendant, was not unfairly so and was warranted by their relevance.  Agreeing with this reasoning, we cannot say that Fox was unfairly prejudiced by the admission of the photographs.  The district court did not abuse its discretion in admitting them.

E.  Ex Post Facto Violation

Fox complains that the district court determined his sentence under a version of the applicable Sentencing Guideline that had been amended after the offense was committed but prior to sentencing.  This, he argues, produced a sentence that violates the ex post facto clause of the Constitution.[82]  Fox correctly states that if the application of the version of the Guideline in effect

_____

[81]Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[82]See U.S. Const. art. I, § 9, cl. 3.

30

on the sentencing date rather than the version that had been in effect on the offense date results in a longer sentence or other disadvantage to the offender, the ex post facto clause is violated.[83] More specifically, Fox states that in determining his sentence the district court applied U.S.S.G. § 2G2.4, producing a substantial increase in the base level of the offense, which in turn resulted in a significantly longer term of incarceration. We disagree.

Fox's presentence investigation report makes clear that, because his offense involved receipt (as opposed to possession) of child pornography, his sentence was determined using § 2G2.2, not § 2G2.4. Although the base offense level of § 2G2.4 was increased by an amendment adopted between Fox's commission of the offense and his sentencing, that section of the Guidelines has always cross-referenced § 2G2.2, the offense level of which has not changed since Fox committed the offense. Accordingly, Fox was not sentenced in violation of the ex post facto clause.

F. Sentence Enhancement

Relying again on the absence of expert testimony about the ages of the children in the photographs, Fox complains that there is insufficient evidence to support the district court's enhancement of his sentence on the basis of his knowing receipt of materials involving a prepubescent minor. The district court

---

[83]See United States v. Suarez, 911 F.2d 1016, 1022 (1990).

responded to this objection at Fox's sentencing hearing, stating that "there are in evidence a number of those pictures, and it's quite obvious in reviewing those that several were under the age of twelve, possibly the age of six or seven."

The government again emphasizes — correctly — that under U.S.S.G. § 2G2.2(b)(1), the presence of only one such image is sufficient support for the enhancement. Furthermore, to satisfy the Guideline's knowledge requirement with respect to the age of the persons depicted, the government need only prove that Fox displayed reckless disregard for the ages of the subjects.[84] Applying this standard, we have no difficulty concluding that the district court's determination that at least one of the images received by Fox depicts a prepubescent minor is not clearly erroneous. The district court properly enhanced Fox's sentence on that basis.

G.  Refusal to Depart Downward

Fox advances that even though he declined to make any comments concerning his involvement in the offense during his presentencing interview with the probation officer, his "eloquent" address to the district court at sentencing — in which he admitted his actions and "stood prepared to accept" his punishment — renders clearly erroneous the district court's refusal to reduce his sentence for acceptance of responsibility. Although the district court

---

[84]See United States v. Kimbrough, 69 F.3d 723, 733 (5th Cir. 1995) (citation omitted).

32

acknowledged the eloquence of Fox's statement, it nevertheless concluded that "from the onset of this case the defendant has failed to accept responsibility for his conduct. He has failed to acknowledge any wrongdoing and has blamed the FBI and others for his conviction." In like manner, the government reasons that Fox's denial of the essential factual elements of the offense at trial, together with his decision not to speak with the probation officer about his involvement in the offense, firmly support the district court's ruling.

The sentencing court is best positioned to determine whether a defendant has displayed the requisite degree of remorse, contrition, and regret to merit a reduction in his sentence. We are unwilling to substitute our remote point of view for the district court's proximate determination that Fox was not entitled to a sentence reduction for acceptance of responsibility, based on his denial of guilt at trial and his refusal to speak with the probation officer before sentencing. Accordingly, we decline Fox's invitation to hold that the district court's refusal to reduce his sentence for acceptance of responsibility constitutes clear error.

III.

CONCLUSION

For the reasons explained above, Fox's conviction and sentence are

AFFIRMED.