220 F.3d 1113 (9th Cir. 2000)
 THE FREE SPEECH COALITION, on its own behalf and on behalf of its members; BOLD TYPE, INC.; JIM GINGERICH; RON RAFFAELLI, Plaintiffs-Appellants,
v.
JANET RENO, Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Defendants-Appellees.
 No. 97-16536
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Filed July 24, 2000
 D.C. No. CV 97-0000281-SC
 
 1
 Before: Warren J. Ferguson and Sidney R. Thomas, Circuit Judges, and Donald W. Molloy,[1] District Judge.
 
 ORDER
 
 2
 The panel as constituted above, has voted as follows: Judges Thomas and Molloy voted to deny the petition for rehearing. Judge Thomas voted to reject the suggestion for rehearing en banc and Judge Molloy recommends rejection of the suggestion; Judge Ferguson voted to grant thepetition for rehearing and recommended granting the suggestion for rehearing en banc.
 
 
 3
 A judge of the court called for a vote on the suggestion for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f).
 
 
 4
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.
 
 
 
 5
 WARDLAW, Circuit Judge, with whom O'SCANNLAIN and T.G. NELSON, Circuit Judges, join, dissenting from denial of rehearing en banc:
 
 
 6
 I respectfully dissent from the order denying the petition for rehearing en banc. The divided panel decision warranted this Court's en banc attention because it creates a conflict with our sister circuits on an issue of exceptional importance.
 
 
 7
 The conflict? The panel majority struck down the provisions of the Child Pornography Prevention Act of 1996 ("CPPA") that criminalize visual depictions that "appear to be" or "convey the impression" of child pornography. See Free Speech Coalition v. Reno, 198 F.3d 1083 (9th Cir. 1999). It held that these provisions violate the First Amendment because they prohibit visual images of "virtual" child pornography along with "actual" child pornography. It did so in the face of decisions of the First and Eleventh Circuits upholding the same provisions of the CPPA. See United States v. Acheson, 195 F.3d 645 (11th Cir. 1999) (rejecting First Amendment challenge to CPPA on grounds of vagueness, overbreadth, and facial invalidity); United States v. Hilton, 167 F.3d 61 (1st Cir. 1999) (same); see also United States v. Pearl, 89 F. Supp. 2d 1237 (D. Utah 2000) (holding CPPA survives strict scrutiny review and expressly rejecting the panel's analysis).
 
 
 8
 The panel majority did not directly flout Supreme Court authority (the Court has yet to address "virtual " as opposed to "actual" child pornographic images). It did, however, disregard the Court's analysis of the compelling governmental interest in "safeguarding the physical and psychological wellbeing of a minor," which, it reasoned, includes the prevention of sexual exploitation and abuse of children. New York v. Ferber, 458 U.S. 747, 756-63 (1982) (holding that "actual" child pornography is a "category of material outside the protection of the First Amendment"). The panel majority narrowed this interest to include only the prevention of harm to real children stemming from their use in the production of pornographic images. At least two more compelling governmental interests are at stake, however, both of which have been identified by Congress as justifications for the regulation at issue. First, as the Supreme Court has explained, the "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." Osborne v. Ohio, 495 U.S. 103, 111 (1990) (citing 1 Attorney General's Comm'n on Pornography, Final Report 649 (1986); D. Campagna & D. Poffenberger, Sexual Trafficking in Children 118 (1988); and S. O'Brien, Child Pornography 89 (1983)). In Osborne, the Court reasoned that the "gravity of the State's interests in this context," including the use of child pornography in the seduction of children, justified a ban on possession of child pornography. Id. Thus, the harm to "real" children is real, whether or not the pornographic images which look real (or else they would not effectively serve their purpose) are actually computer generated.
 
 
 9
 Second, Congress has a compelling interest in ensuring the ability to enforce prohibitions of actual child pornography, an interest achieved through a ban on visual depictions which "appear[ ] to be . . . of a minor engaging in sexually explicit conduct," 18 U.S.C. S 2256(8):
 
 
 10
 As the technology of computer-imaging progresses, it will become increasingly difficult, if not impossible, to distinguish computer-generated from photographic depictions of child sexual activity. It will therefore become almost impossiblefor the Government to meet its burden of proving that a pornographic image is of a real child. Statutes prohibiting the possession of child pornography produced using actual children would be rendered unenforceable and pedophiles who possess pornographic depictions of actual children will go free from punishment.
 
 
 11
 S. Rep. No. 104-358, pt. IV(B); see also Hilton , 167 F.3d at 73 ("As technology improves and access to technology increases, efforts to eradicate the child pornography industry could be effectively frustrated if Congress were prevented from targeting sexually explicit material that `appears to be' of real children."). Defendants have asserted that reasonable doubt exists where the government fails to prove that the images at issue were of an actual minor rather than of an adult altered to resemble one. See S. Rep. No. 104-358, pt. IV(B) (citing as an example United States v. Kimbrough , 69 F.3d 723, 733 (5th Cir. 1995)).[1] In an analogous situation, the Supreme Court held that the First Amendment did not bar the State of New York from prohibiting the distribution of pornographic images of children produced outside the state, noting that "[i]t is often impossible to determine where such material is produced." Ferber, 485 U.S. at 766 n.19. Just as the inability to distinguish domestic from foreign materials justifies a ban on both, the impossibility of determining whether an image is "actual" or "virtual" warrants a prohibition of both.
 
 
 12
 Whether or not an individual judge agrees with the majority decision, our Court should have convened an en banc panel to consider this case because of its exceptional importance. A two-judge majority struck down provisions of a federal statute as unconstitutional when the only other federal courts to rule on the issue have rejected the same constitutional challenges. The panel majority simply dismissed the congressional findings which were based on substantial evidence of the danger to real children of the rapidly advancing computer technology. See S. Rep. No. 104-358, pt. IV(B); see also Turner Broadcasting Sys. v. FCC, 520 U.S. 180, 195 (1997) (requiring courts to "accord substantial deference to the predictive judgments of Congress" in First Amendment cases).
 
 
 13
 The distinction between "actual" child pornography -unprotected speech -and "virtual" child pornography -speech so highly regarded by the panel majority that it applied the highest level of judicial review -should have been more closely scrutinized by our Court. As Judge Ferguson said in dissent:
 
 
 14
 Both real and virtual child pornography contain visual depictions of children engaging in sexually explicit activity. The only difference is that real child pornography uses actual children in its production, whereas virtual child pornography does not. While this distinction is noteworthy, it does not somehow transform virtual child pornography into meaningful speech. Virtual child pornography, like its counterpart real child pornography, is of "slight social value" and constitutes "no essential part of the exposition of ideas."
 
 
 15
 Free Speech Coalition, 198 F.3d at 1100 (Ferguson, J., dissenting) (quoting Chaplinsky v. New Hampshire , 315 U.S. 568, 572 (1942)). This issue is of immense importance not only because our Court strikes down a congressional enactment, but also because of the ready dissemination of such images via the Internet, and the lack of equally sophisticated tools for preventing their reach to those most vulnerable to their impact. The panel majority elevates the free speech rights of pedophiles over the compelling governmental interest in protectingour children. It does so in the context of technology evolving so quickly that even the applicable legal standards are in flux. There cannot be many other issues that are more "en-banc worthy" than this.
 
 
 
 Notes:
 
 
 [1]
 The government was able to overcome this defense in Kimbrough only because it located and produced the original magazine images, which predated the computer technology, from which the computer-generated images were scanned. See S. Rep. No. 104-358, pt. IV(B).