**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERTO R. GONZALES,* Attorney
General, and the UNITED STATES
DEPARTMENT OF JUSTICE,
            *Defendants-Appellees,*

            v.

FREE SPEECH COALITION, on its own
behalf and on behalf of its
members; BOLD TYPE, INC.; JIM
GINGERICH; RON RAFFAELLI,
            *Plaintiffs-Appellants,*

No. 04-16172

D.C. No.
CV-97-00281-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
April 13, 2005—San Francisco, California

Filed May 23, 2005

Before: Donald P. Lay,** Betty B. Fletcher, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States, pursuant to Fed. R. App. P.
43(c)(2).

**The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

5575

**COUNSEL**

Charles W. Scarborough, Civil Division, United States Department of Justice, Washington, D.C., for the defendants-appellees.

H. Louis Sirkin, Sirkin Pinales & Schwartz, Cincinnati, Ohio, for the plaintiffs-appellants.

---

**OPINION**

HAWKINS, Circuit Judge:

The government appeals the district court's award of attorneys' fees to the Free Speech Coalition under the Equal Access to Justice Act ("EAJA") because the court held the government was not "substantially justified" in defending the Child Pornography Prevention Act ("CPPA"). We reverse. Multiple objective indicia support the reasonableness of the government's position, including the novelty of the issue involved and the government's string of successes in defending the CPPA against constitutional attack. We conclude that reasonable minds could have differed over the CPPA's constitutionality, especially where four sister circuits, the district court below, one member of the Ninth Circuit panel, and three Ninth Circuit judges dissenting from denial of rehearing en banc all determined the CPPA to be constitutional before the Supreme Court ultimately struck two sections as unconstitutional.

## I.  BACKGROUND

Before 1996, Congress defined child pornography as a visual depiction that "involves the use of a minor engaging in sexually explicit conduct." *See, e.g.*, 18 U.S.C. § 2256(8)(A) (1994). Congress enacted the CPPA, 18 U.S.C. § 2251 *et seq.*,

to address the issue of virtual child pornography. The CPPA extended the definition of child pornography to include a visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct," 18 U.S.C. § 2256(8)(B) (2000), or "is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(D) (2000).

Between 1999 and 2001, four Courts of Appeals sustained the validity of the CPPA. *See United States v. Fox*, 248 F.3d 394, 406 (5th Cir. 2001) ("We hold that [the CPPA] is not unconstitutionally overbroad."); *United States v. Mento*, 231 F.3d 912, 923 (4th Cir. 2000) ("We hold that the CPPA does not impermissibly regulate protected speech and does not, therefore, offend the First Amendment."); *United States v. Acheson*, 195 F.3d 645, 652 (11th Cir. 1999) ("Given the lack of any substantial overbreadth in light of the statute's legitimate sweep, the CPPA withstands this constitutional challenge."); *United States v. Hilton*, 167 F.3d 61, 74 (1st Cir.), *cert. denied*, 528 U.S. 844 (1999) ("We conclude, therefore, that the CPPA is not unconstitutionally overbroad."); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("While the Ninth Circuit found the CPPA invalid on its face, four other Courts of Appeals have sustained it.").

The Free Speech Coalition ("Coalition"), a California trade association for the adult-entertainment industry, challenged the validity of the CPPA in the United States District Court for the Northern District of California. The Coalition contended that the CPPA was unconstitutionally overbroad and vague under the First Amendment because it defined child pornography as including visual depictions of adults that appear to be minors.

The district court granted summary judgment to the government, holding that the CPPA was not overbroad. "It specifies that only materials that do not use adults and that appear to

be child pornography, even if they are digitally produced, are prohibited." Thus, the court found the CPPA "prohibits only those works necessary to prevent the secondary pernicious effects of child pornography from reaching minors."

The Ninth Circuit reversed. *Free Speech Coalition v. Reno*, 198 F.3d 1083 (9th Cir. 1999). The court held that the phrases "appears to be" a minor, and "conveys the impression" that the depiction portrays a minor, violated the First Amendment for being vague and overbroad. *Id.* at 1086. Judge Ferguson dissented on the grounds that (1) "Congress has provided compelling evidence that virtual child pornography causes real harm to real children" and "[a]s a result, virtual child pornography should join the ranks of real child pornography as a class of speech outside the protection of the First Amendment," and (2) the statutory terms of the CPPA were not substantially overbroad or void for vagueness. *Id.* at 1098 (Ferguson, J., dissenting).

The Ninth Circuit denied a petition for rehearing en banc. *Free Speech Coalition v. Reno*, 220 F.3d 1113 (9th Cir. 2000). Three judges dissented from the denial of rehearing en banc, pointing out that the panel opinion struck down provisions of the CPPA that had been upheld by the First and Eleventh Circuits. *Id.* at 1114 (Wardlaw, J., dissenting from the denial of rehearing en banc). The dissent also argued that several Supreme Court cases cast doubt on the panel's decision, and that the Supreme Court had yet to address "virtual" as opposed to "actual" child pornographic images. *Id.* at 1114-15. Finally, the dissent made the practical argument that, especially in the digital age, the distinction between what is "actual" and what is "virtual," may, as suggested by Judge Ferguson's dissent to the panel opinion, be difficult to discern. *Id.* at 1115.

The Supreme Court granted certiorari, and held that §§ 2256(8)(B) and 2256(8)(D) were overbroad and unconstitutional. *Free Speech Coalition*, 535 U.S. at 256, 258. The

Court determined that the CPPA "extends to images that appear to depict a minor engaging in sexually explicit activity without regard" to the requirements of *Miller v. California*, 413 U.S. 15, 24 (1973),[1] 535 U.S. at 246, and that the CPPA went "beyond" the definition of child pornography in *New York v. Ferber*, 458 U.S. 747 (1982). 535 U.S. at 240. The Court pointed out that *Ferber* relied on the distinction between actual and virtual child pornography, citing virtual images as an "alternative and permissible" means of expression. *Id.* at 251. Thus, the Court concluded that the CPPA "is inconsistent with *Miller* and finds no support in *Ferber*." *Id.* The Supreme Court also rejected the government's other arguments to justify the prohibitions. *Id.* at 256.

Justice Thomas concurred in the judgment, stating that the government's "most persuasive asserted interest" in support of the CPPA is the "prosecution rationale." *Id.* at 259 (Thomas, J., concurring in the judgment). Justice Thomas acknowledged that "technology may evolve to the point where it becomes impossible to enforce actual child pornography laws . . . . In the event this occurs, the Government should not be foreclosed from enacting a regulation of virtual child pornography" addressing this problem. *Id.*

Chief Justice Rehnquist, joined in part by Justice Scalia, dissented, stating that "while potentially impermissible applications of the CPPA may exist, I doubt that they would be 'substantial . . . in relation to the statute's plainly legitimate sweep.' " *Id.* at 273 (Rehnquist, C.J., dissenting) (omission in original) (citation omitted). Justice O'Connor authored a concurrence in part, and dissent in part, in which the Chief Justice and Justice Scalia joined in Part II, finding that the ban on virtual child pornography is not overbroad. *Id.* at 263

---

[1]Under *Miller*, the government must prove that the work taken as a whole appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24.

(O'Connor, J., concurring in the judgment in part and dissenting in part).

After the Supreme Court's decision, the Coalition filed a petition for attorneys' fees under the EAJA in the district court. The district court awarded attorneys' fees to the Coalition, finding that the government was not substantially justified in defending the CPPA because "the constitutional flaw in the CPPA was recognizable from the start." After the parties agreed on the amount of attorneys' fees to be awarded, the district court entered a final judgment awarding $143,423 to the Coalition.

## II.  DISCUSSION

We review the district court's conclusion that the government's position was not "substantially justified," thus warranting an award of attorneys' fees under the EAJA, for an abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 562-63 (1988); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990). "An abuse of discretion occurs if the district court based its decision on an erroneous legal conclusion or a clearly erroneous finding of fact." *Oregon Envtl. Council v. Kunzman*, 817 F.2d 484, 496 (9th Cir. 1987).

Abuse of discretion is "a highly deferential standard," under which the appellate court cannot substitute its "view of what constitutes substantial justification for that of the district court"; rather, the review "is limited to assuring that the district court's determination has a basis in reason." *Bay Area Peace Navy*, 914 F.2d at 1230 (quotation marks and citations omitted). The government bears the burden of demonstrating substantial justification. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

**[1]** The EAJA provides that in an action against the United States, a prevailing party, other than the United States, is entitled to recover attorneys' fees "unless the court finds that the

position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The test for whether the government is substantially justified is one of "reasonableness." *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1257 (9th Cir. 1986). Substantially justified does not mean " 'justified to a high degree,' but rather 'justified in substance or in the main' — that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. Put another way, substantially justified means there is a dispute over which "reasonable minds could differ." *See League of Women Voters*, 798 F.2d at 1260.

**[2]** "[T]he defense of a congressional statute from constitutional challenge will usually be substantially justified." *Id.* at 1259. "[I]n determining the appropriateness of an award of attorneys' fees, both the reasonableness of the statute and the reasonableness of the conduct of the government in this litigation attacking it" should be considered. *Id.* " '[O]bjective indicia' such as the terms of a settlement agreement, the stage in the proceedings at which the merits were decided, and the views of other courts on the merits" can be relevant, but not necessarily dispositive. *Pierce*, 487 U.S. at 568. "[A] string of losses can be indicative; and even more so a string of successes." *Id.* at 569. When objective indicia do not provide a conclusive answer, the court proceeds to the merits of the government's litigating position. *Id.*

The district court set forth several reasons why it viewed the government's position as not substantially justified. Each reason is considered in turn.

A.   *Discounting of the Government's "String of Successes" and Other Objective Indicia of Substantial Justification*

**[3]** The district court noted that the "government counsel behaved in an appropriate manner in constructing nonfrivolous arguments to defend the CPPA." In *Kali*, the court con-

sidered that the government had "argued forcefully and well," despite a loss on the merits, as one indicator of the reasonableness of the government's position. 854 F.2d at 334-35. Here, despite finding the government's arguments "no more unreasonable than the statute they had to defend," the court discounted the reasonableness of the government's arguments based on the court's perception of a "constitutional flaw foreseeable from the outset." This characterization relied too heavily on hindsight, as discussed in the next Section.

The district court conceded that the government's "string of successes" in upholding the CPPA's constitutionality, before the Ninth Circuit found the statute overbroad, "would ordinarily tempt a district judge to indulge a presumption that the statute had plausible constitutionality and that the government's defense had been reasonable, even if unsuccessful." The court was aware that four Courts of Appeals declined to hold the statute overbroad, as did the district court below. And the court, citing *Pierce*, 487 U.S. at 569, acknowledged that "a string of successes" can be an objective indicator of reasonableness under Supreme Court law.

Yet the court declined to accord any presumption of reasonableness from these successes, reframing them as near losses. The district court proposed that circuit courts upholding the CPPA's constitutionality "recognized the important First Amendment problem raised by the statute," and that "the constitutional flaw in the CPPA was recognizable from the start, the only issue left for debate being how to remedy the flaw." But the Supreme Court, to which the district court pointed for guidance on the merits, did not view the circuit opinions in this way, simply observing that four circuits had "sustained" the constitutionality of the CPPA. *Free Speech Coalition*, 535 U.S. at 244.

**[4]** The district court also understood that the Ninth Circuit panel opinion was split, two-to-one. By noting the lack of unanimity in the Ninth Circuit panel decision, the court

implicitly acknowledged the significance of a split decision as an indicator of the reasonableness of the government's position. *See Bay Area Peace Navy*, 914 F.2d at 1231 (disagreement within a panel regarding the merits of the government's appeal suggests a finding of substantial justification). The court did not appear to factor in this indication of reasonableness.

[5] Finally, the district court seemed to overlook two other objective indicia of reasonableness. First, the issue of virtual child pornography and the constitutionality of the CPPA was novel. *See Edwards v. McMahon*, 834 F.2d 796, 802-03 (9th Cir. 1987) (abuse of discretion in granting attorneys' fees in "matter of first impression"); *Hoang Ha v. Schweiker*, 707 F.2d 1104, 1106 (9th Cir. 1983) (abuse of discretion in fee grant where government advanced "a novel but credible extension or interpretation of the law" (quotation marks and citation omitted)). The government argued for a credible extension of *Ferber* based on policy arguments and supporting statements from a subsequent Supreme Court case, *Osborne v. Ohio*, 495 U.S. 103 (1990). The *Hilton* court stated precisely that:

> The legal issues presented in this case, including Congress's justifications offered for extending child pornography statutes to stem the flow of virtual child pornography, have not been analyzed by this, or any other, court of appeals.
>
> We think that it is a logical and permissible extension of the rationales in *Ferber* and *Osborne* to allow the regulation of sexual materials that appear to be of children but did not, in fact, involve the use of live children in their production.

167 F.3d at 73 (footnote omitted). At the very least, "reasonable minds could differ" over the credibility of this novel argument — Judge Ferguson's dissent and the dissent from

the denial of the rehearing en banc prove this, along with the four circuit court opinions sustaining the constitutionality of the CPPA.

Of no small moment, two circuits upheld the CPPA after the Ninth Circuit found it unconstitutional. *United States v. Marolf*, 277 F.3d 1156, 1162-63 (9th Cir. 2002), weighed, as "an additional indication of reasonableness," that *one* circuit adopted the government's position after a Ninth Circuit panel went the other way. *Id.* at 1163. Here, after the Ninth Circuit panel decided against the government in 1999, *two* circuits went the other way: the Fourth Circuit in 2000, and the Fifth Circuit in 2001.[2]

**[6]** Despite these objective indicia of substantial justification, the district court dismissed them as inconclusive. Given the government's appropriate arguments in defense of the CPPA, the "string of successes" in four circuit courts and the district court below, a split panel decision, and numerous other objective indicia of reasonableness, the district court's conclusion that the government's position was not substantially justified was not supported by the record.

B. *Hindsight*

**[7]** The district court examined the underlying merits of the case, using the clear holdings of the Supreme Court as a guide: "[I]t is best to start with the final word by the Supreme Court. That Court's opinion (and the separate opinions) illuminated the merits and the boundaries of reasonableness more definitely and dispositively than the earlier circuit orders." To be sure, the Supreme Court soundly rejected the government's arguments. But relying on the Supreme Court opinion and the "clarity of the holding" puts too much weight on the government's ultimate loss. As the district court correctly recited the law, that the government lost "does not raise a presumption

---

[2]*See Mento*, 231 F.3d 912, and *Fox*, 248 F.3d 394.

that its position was not substantially justified." *Kali*, 854 F.2d at 334.

**[8]** By putting undue weight on the Supreme Court's holding on the merits, the district court seemed to rely on hindsight, rather than an assessment of the reasonableness of the government's position *at the time of the litigation. Cf. Taucher v. Brown-Hruska*, 396 F.3d 1168, 1175 (D.C. Cir. 2005) ("In considering substantial justification under EAJA, however, it is not enough to repeat the analysis of the merits decision, and add adjectives.") "Here as in other areas courts need to guard against being subtly influenced by the familiar shortcomings of hindsight judgment." *Id*. at 1173 (quotation marks and citation omitted).

The district court relied on hindsight when it concluded that "the CPPA, as written, flatly outlawed a specific scenario that *Ferber* had said would enjoy at least the protection afforded by the *Miller* standards." The district court apparently believed that because of *Ferber*, the government was doomed to fail in defending the CPPA.

However, the government argued to extend the reasoning in *Ferber* and could not have known how the Supreme Court might rule in that regard. The Court ended up ruling that the CPPA went "beyond" the definition of child pornography in *Ferber*, and even found "no support in *Ferber*." *Free Speech Coalition*, 535 U.S. at 240, 251.

But before the Supreme Court ruled, reasonable jurists had found that *Ferber* supported, rather than rejected, the government's defense of the statute. For example, Judge Ferguson's dissent cited to *Ferber* for the proposition that legislators should be given "greater leeway" when acting to protect the well-being of children, and that child pornography has minimal social value, which supports that *virtual* child pornography similarly has "little or no social value." *Free Speech Coalition*, 198 F.3d at 1100 (Ferguson, J., dissenting).

In a similar vein, the three judges dissenting from the denial of rehearing en banc asserted that the panel opinion disregarded the Supreme Court's "analysis of the compelling governmental interest in 'safeguarding the physical and psychological well-being of a minor,' " including the prevention of sexual exploitation and abuse of children. *Free Speech Coalition*, 220 F.3d at 1114 (citing *Ferber*, 458 U.S. at 756-63) (Wardlaw, J., dissenting from the denial of rehearing en banc). In another analogy to *Ferber*, the dissent reasoned that "[j]ust as the inability to distinguish domestic from foreign materials justifies a ban on both, the impossibility of determining whether an image is 'actual' or 'virtual' warrants a prohibition of both." *Id.* at 1115.

All four circuits upholding the constitutionality of the CPPA found *Ferber* helpful, rather than harmful, to the government's position. In *Hilton*, the court noted that *Ferber* carved out an entire category of speech as unprotected by the First Amendment — i.e., child pornography. 167 F.3d at 69. "The *Ferber* Court did not establish a single one-size-fits-all constitutional definition of child pornography . . . but provided general guiding principles." *Id.* The First Circuit further noted that *Ferber* did give "greater leeway" to legislatures to regulate sexual depictions of children. *Id.* at 70; *see also Acheson*, 195 F.3d at 650 (citing same quote). Thus, the *Hilton* court found: "Relying on *Ferber*'s discussion of the importance of protecting children from sexual exploitation, [Hilton and amici] argue that the Supreme Court has strictly limited regulation of child pornography to images manufactured with the use of live children. But we find no firm basis for this overly restrictive reading of precedent." 167 F.3d at 72.

The Fourth and Eleventh Circuits focused on the evolution of child pornography since the *Ferber* decision. In *Mento*, the court found:

> *Ferber* necessarily dealt only with depictions of
> actual children, long before virtual pornography

became an issue. Viewed in the proper context, *Ferber* in no way stands for the proposition that permissible governmental interests in the realm of child pornography would be forever restricted to the harm suffered by identifiable children participating in its production.

231 F.3d at 919. Similarly, the *Fox* court concluded that "*Ferber* and *Osborne*, decided long before the specter of 'virtual' child pornography appeared, in no way limit the government's interests in the area of child pornography to the prevention of only the harm suffered by the actual children who participate in the production of pornography." 248 F.3d at 402.

Thus, "reasonable minds" could and *did* differ about the impact of *Ferber* on the CPPA before the Supreme Court deemed it unconstitutional. Only hindsight can support the district court's assessment that *Ferber* inevitably sounded the death knell of the CPPA.

## III. CONCLUSION

**[9]** The district court's finding that the government's defense of the CPPA was not substantially justified is REVERSED, and the award of attorneys' fees under the EAJA is VACATED.