**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WESTERN WATERSHEDS PROJECT,
            *Plaintiff-Appellant,*

            v.

STEVE ELLIS, Director, Idaho State
Office, Bureau of Land
Management; RICK VANDER VOET;
BUREAU OF LAND MANAGEMENT,
            *Defendants-Appellees.*

No. 11-35464

D.C. No.
1:04-cv-00181-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
August 27, 2012—Seattle, Washington

Filed October 9, 2012

Before: Mary M. Schroeder and Ronald M. Gould,
Circuit Judges, and Jed S. Rakoff, Senior District Judge.*

Opinion by Judge Schroeder

---

*The Honorable Jed S. Rakoff, Senior United States District Judge for
the Southern District of New York, sitting by designation.

---

**COUNSEL**

Todd C. Tucci, Boise, Idaho, for plaintiff-appellant Western Watersheds Project.

Syrena C. Hargrove, Assistant United States Attorney, Boise, Idaho, for defendants-appellees Steve Ellis, Director of Idaho Bureau of Land Management, et al.

---

**OPINION**

SCHROEDER, Circuit Judge:

This appeal involves an attorneys' fee dispute that added a rancorous coda to long-running grazing permit litigation in Idaho that was all ably overseen by the district court. The plaintiff, Western Watersheds Project ("WWP"), originally filed this action in 2004 challenging the Bureau of Land Management's ("BLM") renewal of grazing permits in the Jarbidge Resource Area ("JRA"), covering a large expanse of Southern Idaho. In 2005, the district court ruled in a published opinion that WWP's challenge had merit and that the BLM had violated federal statutes by inadequately protecting habitat of threatened, endangered, or sensitive species. *See West-*

*ern Watersheds Project v. Bennett (WWP I)*, 392 F. Supp. 2d 1217, 1227-29 (D. Idaho 2005).

The parties in 2006 entered into what they thought was a settlement of the entire dispute, but in July of 2007 a massive fire changed the situation dramatically. The BLM then allowed grazing on unburned areas to continue, and after taking several months to regroup, began issuing new grazing authorizations. WWP successfully challenged the post-fire grazing decisions and authorizations as inadequately protecting wildlife habitat, but the district court denied WWP's claim for fees, and this appeal followed. The issue before us is thus whether the district court erred in denying plaintiff WWP fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A).

WWP's position is that the district court considered only the reasonableness of the underlying agency decision to issue grazing authorizations after the fire, and did not adequately consider the reasonableness of the litigation strategy defending that decision. Our review of the record convinces us that the district court did consider both factors, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The background of the dispute is more fully explained in the district court's 2005 opinion. *WWP I*, 392 F. Supp. 2d at 1220-1222. The BLM has divided the public lands it manages into administrative segments it calls Resource Areas. *See* 43 C.F.R. § 1601.0-5. Each Resource Area is required to have a Resource Management Plan ("RMP"). *See* 43 U.S.C. §§ 1701-84; *see also* 43 C.F.R. § 1610.1(b). The BLM has managed the Jarbidge Resource Area, an area of approximately 1.7 million acres of land in Southern Idaho, pursuant to the RMP completed in 1987. A key issue in managing the JRA has been preventing further environmental deterioration caused by excessive grazing. A related concern has been damage to the habitat for listed species and candidates for listing

under environmental statutes like the Endangered Species Act. Of particular concern have been the habitats for the sage grouse and pygmy rabbit, species whose numbers have dramatically declined during the last century.

In 2004, WWP challenged the BLM's renewal of grazing permits for 28 of the allotments managed under the 1987 plan. WWP contended that the permits conflicted with the RMP's provisions to protect wildlife habitat. The BLM responded that such provisions were aspirational rather than mandatory. The district court ruled otherwise, holding that the provisions spoke "in terms of requirements, not suggestions." *WWP I*, 392 F. Supp. 2d at 1227. The district court enjoined grazing on the challenged allotments pending the BLM's completion of a new environmental analysis. These rulings are not at issue here.

The 2005 rulings resulted in the parties forming their Settlement Agreement. It established interim grazing restrictions that were to apply during the time frame the Agreement set for the BLM to complete a new RMP for the Jarbidge Area, together with a supporting Environmental Impact Statement. The Settlement Agreement also contemplated that the new RMP would be completed in 2009. The Settlement Agreement resolved all of the issues concerning attorneys' fees and costs up through that stage of the litigation.

All these well-laid plans were frustrated, however, when a massive wildfire, termed by the district court "catastrophic," swept through the area in 2007. The fire, known as the Murphy Complex Fire, burned more than 400,000 acres, destroying most of the known pygmy rabbit habitat and sage grouse nesting habitat. It also destroyed much of the grazing land.

In early 2008 the BLM began issuing authorizations for grazing on the unburned areas. The fire's habitat destruction and the new grazing authorizations caused WWP to file a motion to reopen the litigation in order to seek an injunction

against grazing on many of the remaining unburned allotments. Although the district court declined to alter the permits covered by the Agreement, it ruled in favor of WWP with respect to the remaining allotments. The district court held that the government had to reduce the grazing in the unburned areas to provide needed wildlife habitat. The court observed, however, that the government would act in good faith to reduce grazing and therefore denied as unnecessary WWP's request for a formal injunction against all grazing pending the required reexamination of the grazing authorizations.

None of those 2009 district court rulings are at issue in this appeal. What is at issue is WWP's subsequent motion for attorneys' fees as the prevailing party. Under the EAJA, a prevailing party is generally entitled to fees against the government unless the position of the government was substantially justified. 28 U.S.C. § 2412(d)(1)(A); *see Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). The district court denied WWP attorneys' fees and WWP appeals, contending the district court ignored one of the factors it was required to consider in determining whether the government's position in this case was substantially justified.

## DISCUSSION

**[1]** In an action brought by or against the United States, the EAJA requires the court to award fees and costs to the "prevailing party other than the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In determining whether the position of the United States was substantially justified under the EAJA, a court must look "both to the government's position during litigation and to 'the action or failure to act by the agency upon which the civil action is based.' " *United States v. Marolf*, 277 F.3d 1156, 1161 (9th Cir. 2002) (quoting 28 U.S.C. § 2412(d)(1)(B)). A position is substantially justified if it has a "reasonable basis in both law and fact." *Id.* The

government has the burden to show that its position was substantially justified. *Id.* (citing *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001)). In this case, the underlying action is the post-fire decision to allow grazing in the unburned areas. WWP argued that in taking this action, the BLM ignored the district court's earlier ruling that habitat preservation was mandatory.

In denying fees for the post-fire litigation, the district court gave the following explanation:

> BLM was doing the best it could in this dire situation. While the BLM was committing the same error in interpretation after the fire as it did before, its post-fire error was the result of managers scrambling to salvage something from a disaster, and was not a blatant disregard of the [c]ourt's prior decision. . . . The landscape had so changed that a reasonable argument could be made to support the BLM's management, even if that argument ultimately proved unsuccessful.

WWP now argues that the district court did not evaluate the reasonableness of BLM's litigation position, defending the grazing authorizations, when the court denied WWP's motion for fees. WWP points to the district court's description of the changed landscape and asserts that the district court considered only the underlying decision of the BLM to authorize grazing in the unburned areas, but not its subsequent litigation position defending that strategy.

**[2]** The district court's opinion, however, refers not only to the unexpected events that led to the agency grazing decision, but also the reasonableness of defending that decision. In the briefing to the district court on the fee issue, both parties acknowledged the need for the court to consider the underlying agency decision as well as its position in the litigation. The district court stated that "a reasonable argument could be

made to support the BLM's management, even if that argument ultimately proved unsuccessful." The "unsuccessful" argument was the one made during the post-fire litigation.

The district court's explanation addressed WWP's principal argument that the BLM was attempting to defend an interpretation of the RMP that the district court had rejected in its 2005 opinion. In the district court, WWP's attack on both the underlying agency decision and its litigation strategy had the same focus. WWP's argument did not separate the litigation strategy from the grazing decision. We therefore cannot fault the district court for not parsing WWP's argument in the way that WWP asks us to do in this appeal.

**[3]** WWP stated before the district court that neither the underlying actions nor the litigation position could be substantially justified because the BLM was "again misreading the RMP," just as it had in the 2005 litigation. The district court, in rejecting the BLM's post-fire position, explained in meticulous detail how conditions had changed dramatically due to the fire. Its 2009 decision made 255 total findings of fact, including 21 separate findings of fact on the effects of the Murphy Complex Fire. The district court agreed with WWP that the BLM had made the same error in interpretation, but said BLM was not "blatant[ly] disregard[ing] [ ] the [c]ourt's prior decision." Rather it was "scrambling to salvage something from a disaster." The record supports this evaluation. There was no abuse of discretion in denying fees.

**AFFIRMED**.